### FANT v. MILLER.

No. 5239.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

A. V. Hundley, of Alexandria, for appellant.

Gus A. Voltz, of Alexandria, for appellee.

DREW, Judge.

Plaintiff alleged that he leased to defendant a certain tract of land in Rapides parish, La., for farming purposes for an agreed money rent of $150, represented by a promissory note bearing interest at the rate of 8 per centum per annum from maturity until paid, and 10 per centum attorney's fees on both principal and interest.

He further alleged that certain property upon which he had a lessor's lien and privilege had been removed from the leased premises and disposed of, and prayed for a provisional seizure to issue, for judgment in the amount of the note, and for recognition of his lessor's lien and privilege on all the property and effects situated on the leased premises. Under the writ, the following property was seized:

"One mule; one walking cultivator; one mare; one wagon; one heifer calf; five bee hives; two sets plow harness; and one harrow."

Defendant admitted the rent contract and the making of the note alleged on, but denied he owed the full amount set forth in said note for the reason that the land rented was overflowed and the crop made thereon greatly reduced on that account. He further answered by showing that he is a farmer and that the property seized under said writ is exempt from the operation of the lessor's privilege; that the provisional seizure should be set aside, annulled, and vacated.

No evidence was offered on the trial of the case below. By agreement, it was submitted to the court for a determination as to whether or not the law with respect to certain exemptions allowed under article 2705 of the Revised Civil Code is applicable to farmers. The trial judge was of the opinion that one engaged in farming is not engaged in a "trade or profession," and that the exemption does not apply. He therefore rendered judgment for plaintiff as prayed for, and granted orders of appeal to this court.

The case was likewise presented here in the same manner it was presented below. At the time the case was submitted, we had before us the case of O. L. Young v. H. W. Geter, 170 So. 410, in which the same question was presented for determination. In that case we applied to the Supreme Court for instructions. 170 So. 240. Our instructions from the Supreme Court, by a divided court, are as follows:

"The facts of the case, as certified to by the Court of Appeal, are in substance as follows: O. L. Young, who had leased his farm to the defendant, H. W. Geter, provisionally seized for the payment of his rent the movable property belonging to the defendant found on the leased premises; the defendant claims that from the property seized, the hereinafter described property is exempt from seizure and sale for rent, under the provisions of article 644 of the Code of Practice and the exemption clause of article 2705 of the Revised Civil Code, as amended by Act No. 107 of 1934, viz.: two turning plows; one cultivator; one disc; two sweepstocks; two side harrows; blacksmith shop; one mowing machine; two wagons; one brown horse mule; one dark bay mule; one gasoline engine; one molasses mill; and six sets of harness.

"The first question submitted for our instructions is: 'Is the pursuit or occupation of farming a "trade" or "profession," within the meaning of article 2705 of the Civil Code and article 644 of the Code of Practice?'

"It is provided under article 2705 that 'the lessor has, for the payment of his rent, * * * a right of pledge on the movable effects of the lessee, which are found on the property leased. * * * But the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, * * * the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family.' And it is provided under article 644 of the Code of Practice that 'the sheriff or constable can not seize * * * the tools and instruments, * * * necessary for the exercise of his or her calling, trade or profession by which he or she makes a living.'

"The plaintiff, however, contends that farming is not a 'trade or profession' and, therefore, the exemption has no application in the case at bar, citing as authority therefor the doctrine laid down in the case of Vento v. Amici, decided by the Court of Appeal, First Circuit, reported in 159 So. 751, 752, wherein it was held that:

"'The conclusion seems irresistible to us that the exemption of "tools and instruments" therein provided applies to the les-

see who exercises some particular trade or profession in the generally accepted sense of those terms and not to one who is engaged in the occupation of farming.'

■ "After reviewing the case of Vento v. Amici, supra, we are not satisfied with the reasoning of the court in arriving at its conclusion. It seems to us that the court overlooked the purpose of the exemption and narrowed down its opinion to a most technical meaning of the words 'trade or profession.' Moreover, when it concluded that the exemption 'applied to the lessee who exercises *some particular trade or profession* in the generally accepted sense of those terms and not to one who is engaged in the occupation of farming,' it thereby placed a limitation which is not included in the article, and violated one of the cardinal rules of construction of exemption laws, that is, that the intention of the lawmakers must be discovered and carried out, and to give that intention a broad and liberal interpretation conducive to the purpose of the exemption. (Italics ours.)

"What was the intention and purpose of the Legislature in writing into article 2705 the exemption clause that 'the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, * * * *the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family?'* (Italics ours.)

"It is stated in Ruling Case Law, vol. 11, § 3, p. 490, that:

"'Exemption laws are enacted to prevent the unfortunate citizen from having all the necessaries of life swept away and to preserve for him certain things reasonably necessary to enable him to earn a livelihood for himself and family. The sole purpose of all such laws is to protect the citizens of the state from being reduced by financial misfortune to absolute want, and to encourage industry and thrift and the building up of homes by placing beyond the reach of creditors. the homestead and such tools, implements or appliances as a man may require to prosecute his business, whatever his walk in life or his occupation may be. Every man, even the extravagant and improvident, owes a first duty to those immediately dependent upon him. And so the state has an interest that no citizen shall be reduced to a condition of destitution so as to be prevented from prosecuting useful industrial employment for which

he may be fitted, and that families shall not be deprived by extravagance or misfortune of the shelter and comforts necessary to health and activity.'

"On the same subject-matter, in Corpus Juris, vol. 25, p. 8, § 2, it is stated:

"'In some jurisdictions the exemption is regarded as allowed for the benefit of the debtor, while in others it is regarded as in the nature of a police regulation primarily for the benefit of the community. *The purpose underlying all exemption legislation is the securing to the unfortunate debtor of the means to support himself and his family, the protection of the family being the main consideration.* * * *' (Italics ours.)

"In order to advance the humane purpose of preserving to the unfortunate debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public, it has become an almost universal rule that statutes creating an exemption should receive a liberal construction in favor of the debtor. 11 R.C.L., § 4, p. 490; 25 Corpus Juris, § 8, p. 10.

■ "Although the exemption clause became a part of article 2705 (old article 2675) since 1852, nevertheless few cases involving the clause were presented to this court and none involving the question of the rights of a farmer to the exemption; but in determining whether the debtor is entitled to the exemption, this court has adopted the rule that whenever the claim to the exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption will be allowed. A. Wilbert's Sons Lumber & Shingle Company v. Ricard, 167 La. 416, 119 So. 411; Sliman et al. v. Fish, 177 La. 38, 147 So. 493.

■ "A careful review and consideration of all the cases involving the exemption clause under article 2705 of the Revised Civil Code and the construction of the clause itself convinces us that *our lawmakers incorporated the exemption clause in article 2705 of the Revised Civil Code,* which is a reproduction of Act No. 23 of 1852, as amended by Act No. 107 of 1934, *with the primary intention of protecting the means by which the debtor earns a living for himself and his family,* and that it was never their intention to limit the exemption to any particular trade or profession to the exclusion of so large a class of our citizens as is represented by

the farming element. Furthermore, we think that the clause 'tools and instruments necessary for the exercise of the trade or profession,' was intended to place a limitation upon the tools or instruments which the debtor is entitled to retain from the seized property, and in this case, forms the basis of question No. 3 submitted by the Court of Appeal.

"Under question No. 2, we are asked: 'Does the exemption provided in article 2705 of the Civil Code prevail over the provisions of article 645 of the Code of Practice, and sections 1 and 2 of article 11 of the Constitution, as regards those chattels which constitute the tools and instruments necessary for the exercise of the trade or profession by which he (the farmer) gains his living and that of his family?'

"Section 1 of article 11, Constitution of 1921, provides that *'there shall be exempt from seizure and sale* by any process whatever except as herein provided, * * * *the homestead,* * * * owned by the debtor and occupied by him, * * * *also two work horses,* * * * whether these exempted objects be attached to a ·homestead or not, and *on a farm* the necessary quantity of corn and fodder, hay and potatoes, for the current year, *and the necessary farming implements,* to the value of two thousand dollars.' (Italics ours.)

 "Under section 2 of that article it is provided that *'this exemption shall not apply to the following debts,* to-wit: * * * 5. *For rent,'* etc. (Italics ours.) Necessarily this refers only to the specific exemption provided for in section 1 of article 11 of the Constitution. It has no reference to and cannot apply to article 2705 of the Revised Civil Code, which gives the lessor the right of pledge on the movable effects of his lessee for the payment of his rent, and the exemptions provided for within that codal article. It is hornbook law that if the Legislature had the right to grant the landlord this right of pledge, by the same token it had the authority to grant such exemptions and make such limitations as it saw fit.

"Neither has article 645 of the Code of Practice any application to the exemption allowed the debtor under article 2705 of the Revised Civil Code; it is merely complementary to and is placed in the Code for the purpose of carrying out the provisions of the Constitution relative to homestead exemptions.

"To question No. 3, i. e., 'within what limitations, as regards specific chattels, may the exemption be applied,' our answer is that the facts of each case must be considered and will depend upon the class of farming, whether a rice, sugarcane, or truck farmer, etc., and the extent of the farming operations. The test is whether or not the chattels claimed to be exempt under the codal article by the debtor are necessary to operate his farm.

"The above and foregoing are our answers and instructions to the questions propounded by the Court of Appeal for the Second Circuit."

We therefore adopt as our opinion in determining the question presented the instructions quoted above. However, since in this case there is no evidence upon which to predicate a judgment, we are forced to remand it for a new trial, in accordance with the views above expressed.

It therefore follows that the judgment of the lower court is set aside and the case remanded ·to be proceeded with according to law.